IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAWNNA SNYDER,            )<br>                            )<br>                            )<br>    Plaintiff and Third-Party )<br>    Defendant,              )<br>                            )<br>v.                          )<br>                            )<br>MARY DAVIDSON,              )<br>                            )<br>                            )<br>    Defendant and Third-Party )<br>    Plaintiff.              )  | 2:20-CV-01373-CCW |

## MEMORANDUM OPINION AND ORDER

In this diversity action, Plaintiff (and Third-Party Defendant) Shawnna Snyder and Defendant (and Third-Party Plaintiff) Mary Davidson dispute liability arising from a two-car collision on August 30, 2019. Pending before the Court are four of Ms. Snyder's Motions in Limine, which seek to preclude Ms. Davidson from introducing: (1) Ms. Snyder's toxicology report from after the accident, ECF No. 111 ("First Motion in Limine"); (2) purportedly speculative testimony from the expert report of Carl T. Hasselman, M.D., ECF No. 113 ("Second Motion in Limine"); (3) evidence of Ms. Snyder's prior criminal convictions, ECF No. 115 ("Third Motion in Limine"); and (4) the testimony and entire expert report of Daniel Connolly, a certified crash reconstructionist, ECF No. 117 ("Fourth Motion in Limine"). For the reasons set forth below, the Court will GRANT the First Motion in Limine, ECF No. 111, and the Third Motion in Limine, ECF No. 115. The Court will DENY the Second Motion in Limine, ECF No. 113. Finally, the Court will GRANT IN PART and DENY IN PART the Fourth Motion in Limine, ECF No. 117.

I.      **Legal Standard**

A court's authority to rule on motions in limine comes from its inherent authority to manage trials proceeding before it. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Consistent with that authority, a court may screen irrelevant or otherwise improper evidence, thereby "narrow[ing] the evidentiary issues for trial and . . . eliminat[ing] unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990); *see United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988) ("A trial judge has a duty to limit the jury's exposure to only that which is probative and relevant and must attempt to screen from the jury any proffer that it deems irrelevant."). That said, a "trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, 2019 WL 3573663, at *3 (W.D. Pa. Aug. 6, 2019) (Gibson, J.) (cleaned up). Although a federal district court sitting in diversity applies the Federal Rules of Evidence, *see Forrest v. Beloit Corp.*, 424 F.3d 344, 354 (3d Cir. 2005), state substantive law may inform certain evidentiary rulings, such as relevancy, *see, e.g.*, *Diehl v. Blaw-Knox*, 360 F.3d 426, 431 n. 3 (3d Cir. 2004).

II.     **Discussion**

A.      **The Court Will Grant Ms. Snyder's First Motion in Limine (ECF No. 111)**

In her First Motion in Limine, Ms. Snyder asks the Court to exclude, as "extremely prejudicial," a report from a toxicology screening performed on her the morning after the accident, and any testimony implying that she was intoxicated at the time of the accident. ECF No. 111 ¶¶ 7, 9–13. Ms. Davidson responds that she does not intend to argue that Ms. Snyder was intoxicated at the time of the accident but that her history of drug use, including the toxicology report, should be admitted for three purposes: (1) evidence of Ms. Snyder's lifestyle habits for the purpose of

determining life expectancy damages; (2) evidence of Ms. Snyder's failure to mitigate her damages; and (3) for impeachment if Ms. Snyder denies her history of drug use. ECF No. 128 at 1–4.

Ms. Snyder's argument implicates Federal Rule of Evidence 403, which gives a court "broad discretion" to exclude relevant evidence when its "'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *United States v. Clifford*, 704 F.2d 86, 89 (3d Cir. 1983) (quoting Fed. R. Evid. 403). Unfair prejudice exists where there is an "undue tendency to suggest decision on an improper basis." *United States v. Rutland*, 372 F.3d 543, 546 (3d Cir. 2004) (internal quotation marks omitted).

The Court agrees with Ms. Snyder and will exclude the toxicology report and evidence that Ms. Snyder was intoxicated at the time of the accident as unfairly prejudicial. On the one hand, evidence that Ms. Snyder had drugs in her system at the time of the accident is highly and unfairly prejudicial—the jury could consider the evidence and unfairly conclude that Ms. Snyder was intoxicated, causing the accident, despite Ms. Davidson's intention not to present such an argument. On the other hand, the probative value of the evidence is limited. Although drug use is certainly probative of damages and mitigation, *see, e.g.*, *Rovegno*, 677 F.2d at 329, Ms. Davidson is free to establish Ms. Snyder's history of drug use through other (less prejudicial) evidence, for example by eliciting testimony about Ms. Snyder's drug use generally. As to impeachment, Ms. Davidson is free to use other evidence that does not implicate drug use at the time of the accident, to impeach Ms. Snyder if she denies her history of drug use.[1] Accordingly, Ms. Snyder's First

---

[1] The Court also questions the toxicology report's probative value in light of Ms. Snyder's representation that she was given several medications before undergoing surgery after the accident. ECF No. 112 at 1  *see also* ECF No. 112-1 at 1.

Motion in Limine will be granted. Ms. Davidson may not introduce the toxicology report or any other evidence that Ms. Snyder was intoxicated at the time of the accident, pursuant to Rule 403.

### B.   The Court Will Deny Ms. Snyder's Second Motion in Limine (ECF No. 113)

In her Second Motion in Limine, Ms. Snyder asks the Court to exclude certain testimony and portions of the report by Ms. Davidson's medical expert, Dr. Hasselman, as unreliable. ECF No. 113 ¶¶ 9–10. Specifically, Ms. Snyder appears to seek to preclude Dr. Hasselman from testifying that Ms. Snyder's own lifestyle choices—drug use, smoking, and failing to heed postoperative instructions—caused Ms. Snyder to develop avascular necrosis of the talus after surgery on a broken ankle she sustained in the accident. ECF No. 114 at 2. Ms. Davidson counters that Dr. Hasselman's opinion is admissible under the rules governing expert evidence.

Federal Rule of Evidence 702 permits an expert opinion to be introduced so long as three requirements are met: "(1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge, i.e., reliability; and (3) the expert's testimony must assist the trier of fact, i.e., fit." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (cleaned up). Where, as here, reliability is in dispute, a court "has broad discretion in determining the admissibility of evidence, and 'considerable leeway' in determining the reliability of particular expert testimony." *Walker v. Gordon*, 46 Fed. Appx. 691, 694 (3d Cir. 2002) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152-53 (1999)). In analyzing reliability, a district court sitting in diversity applies "the state rules on the degree of certainty required of an expert's opinion." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 n.4 (3d Cir. 1999). In Pennsylvania, a medical expert's opinion must be provided "with a reasonable degree of medical certainty" to be admissible. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 750 (3d Cir. 1994). An expert that testifies to a 51% degree of certainty is considered legally

4

insufficient to meet the requisite degree of certainty. *Griffin v. Univ. of Pittsburgh Med. Ctr.–Braddock Hosp.*, 950 A.2d 996, 1003 (Pa. Super. 2008).

The Court agrees with Ms. Davidson that Dr. Hasselman's opinion regarding the reasons for Ms. Snyder's avascular necrosis is given with the requisite degree of certainty. Ms. Snyder, to support her argument, focuses on Dr. Hasselman's finding that "only 50 percent of Hawkins Classification 2 talus fractures go on to avascular necrosis." ECF No. 130-1 at 6. From this line, Ms. Snyder essentially argues that if she always had a 50 percent chance of developing avascular necrosis, then Dr. Hasselman cannot testify with reasonable certainty that her lifestyle choices caused the complication.

Ms. Snyder's argument is unavailing because it oversimplifies Dr. Hasselman's opinion. Dr. Hasselman does not suggest that a person's likelihood of developing avascular necrosis is fifty percent regardless of any action taken. On the contrary, his report—citing studies—indicates that drug use and smoking can significantly influence whether someone is in the half of the population with successful outcomes or unsuccessful outcomes. *See* ECF No. 130-1 at 6 (relying on medical research that found drug use to have "greater failure rates and higher rates of postoperative complications"). Dr. Hasselman also described how Ms. Snyder walked on her broken ankle immediately following the accident, how she had several "no shows" to medical appointments, and how she walked on her ankle post-operation earlier than instructed. *Id.* at 3. Reading the entirety of Dr. Hasselman's report, his opinion that Ms.Snyder's actions negatively impacted her recovery is sufficiently reliable under Rule 702, as it is stated with a reasonable degree of medical certainty. *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999). Accordingly, Ms. Snyder's Second Motion in Limine will be denied.[2]

---

[2] As discussed above, although the majority of Dr. Hasselman's report can be admitted, Ms. Davidson cannot include the references to the toxicology report taken around the time of the accident, given the toxicology report's danger of

## C.   The Court Will Grant Ms. Snyder's Fourth Motion in Limine (ECF No. 115)

In her Third Motion in Limine, Ms. Snyder asks the Court to exclude evidence of two criminal convictions: (1) for her possession of drugs and drug paraphernalia from 2021; and (2) for her possession of drugs and drug paraphernalia from 2015.[3] ECF No. 116 at 2; ECF No. 132 at 1 n.1. Ms. Snyder argues that the convictions are inadmissible because they are unfairly prejudicial and, if they would be used for impeachment, do not meet the requirements of Federal Rule of Evidence 609(a)(1). Ms. Davidson argues that these two convictions should be admitted (1) to determine Ms. Snyder's life expectancy damages; (2) her failure to mitigate her damages; and (3) for impeachment purposes. ECF No. 132 at 2–4.

Turning to whether the criminal convictions can be introduced to establish damages, the Third Circuit has established a four-part test for determining whether to admit prior bad act evidence, including evidence of a criminal conviction. *United States v. Garner*, 961 F.3d 264, 273 (3d Cir. 2020). Such evidence is admissible where it is: "(1) offered for a non-propensity purpose; (2) relevant to that identified purpose; (3) sufficiently probative under Rule 403 so its probative value is not outweighed by any inherent danger of unfair prejudice; and (4) 'accompanied by a limiting instruction, if requested.'" *Id.* (quoting *United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013)).

The Court agrees with Ms. Snyder that her convictions should be precluded insofar as they would be used to prove damages or a failure to mitigate. Although those are non-propensity

---

unfair prejudice and risk of misleading the jury pursuant to Rule 403. If Ms. Davidson seeks to admit his report, she must redact the references to the August 31, 2019 toxicology report. ECF No. 130-1 at 3. Similarly, consistent with the Court's ruling herein, Ms. Davidson must also redact references to Ms. Snyder's criminal convictions, such as "[s]he unfortunately has been unable to find employment since completing her recent incarceration." *Id.* at 5.

[3] Ms. Snyder also seeks to preclude use of other motor vehicle related criminal convictions. ECF No. 116 at 2. Ms. Davidson does not oppose Ms. Snyder's motion to exclude the motor vehicle related offenses; she only seeks admission of Ms. Snyder's drug convictions. ECF Nos. 116 at 2; 132 at 1 n. 1. The Court will only address the two criminal convictions in dispute.

purposes, and the criminal convictions are relevant to those purposes, the probative value of Ms. Snyder's prior criminal convictions is likely substantially outweighed by a danger of unfair prejudice. *Garner*, 961 F.3d at 273. As described above, the probative value of Ms. Snyder's convictions as to her life expectancy is minimal given that Ms. Davidson has other, less prejudicial means of establishing her drug use. *See e.g., Tabor v. Miller*, 389 F.2d 645, 647 (3d Cir. 1968) (noting that a wide array of evidence is acceptable to establish life expectancy damages). By contrast, admission of numerous drug convictions is highly and unfairly prejudicial because it could influence the jury to make a decision on an improper basis—inferring that because she is a criminal she must have been at fault, or that she was intoxicated at the time of the accident. Therefore, because the probative value of Ms. Snyder's criminal convictions is substantially outweighed by the risk of unfair prejudice, this evidence is not admissible to establish damages.

As to impeachment, Rule 609 governs the analysis. Under Rule 609(a)(1)(A), for crimes "punishable by death or by imprisonment for more than one year, the evidence . . . must be admitted, subject to Rule 403, in a civil case." Where the crime is not punishable by a term of imprisonment for over one year, the evidence cannot be used for impeachment purposes. *Cree v. Hatcher*, 969 F.2d 34, 38 n.4 (3d Cir. 1992); *Stroud v. Boorstein*, CIV.A. 10-3355, 2014 WL 5784639, *4 (E.D. Pa. Nov. 5, 2014). Under Rule 609(a)(2), evidence of a crime, regardless of the punishment, is admissible "if the court can readily determine that establishing the elements of the crime required proving – or the witness's admitting – a dishonest act or false statement." Here, Ms. Snyder's drug convictions are not admissible for impeachment because they were not punishable by more than one year of imprisonment and because they are not crimes of dishonest acts or false statements. Accordingly, the Court will grant Ms. Snyder's Third Motion in Limine to exclude evidence of her prior criminal convictions.

**D.     The Court Will Grant in Part and Deny in Part Ms. Snyder's Fourth Motion in Limine (ECF No. 117)**

In her Fourth Motion in Limine, Ms. Snyder asks the Court to exclude the expert report of Daniel P. Connolly, a certified crash reconstructionist, because it does not meet the expert requirements set forth in Rule 702 and its probative value is substantially outweighed by a danger of unfair prejudice pursuant to Rule 403 and 703. ECF No. 117 ¶ 2. For the following reasons, the Court will grant in part and deny in part the Fourth Motion in Limine.

As noted earlier, Rule 702 dictates whether an expert opinion is admissible, examining (1) an expert's qualifications; (2) the expert opinion's reliability; and (3) whether the expert opinion will assist the jury. *Schiff*, 602 F.3d at 172. Ms. Snyder is not disputing Mr. Connolly's qualifications. Rather, Ms. Snyder claims that Mr. Connolly's report fails to provide any reliable principles and methods for his conclusions, is based on his subjective belief rather than facts or data, and cannot help the jury understand a fact in issue. *See generally* ECF No. 118. She states that his report "employs no 'recognizable principles and methods'" because he ignores certain witness testimony that conflicts with Ms. Davidson's version of events. ECF No. 118 at 5. She describes his report as "nothing more than 'argument' with an 'expert' label affixed." *Id.* She also claims that his report is not based on facts or data, but solely relies on Ms. Davidson's testimony to form his conclusions. *Id.* at 4.

The Court finds that Mr. Connolly has provided reliable principles and methods for some, but not all, of his conclusions. To start, Mr. Connolly is a certified crash reconstructionist with decades of experience. ECF No. 118-5 at 8; *see generally* ECF No. 126-5 (his resume). Based on his experience, his report includes methodologies that have been reviewed and accepted in the collision investigation industry, including examining the police crash report, the witnesses' testimony provided at depositions and interviews with insurance providers, and photographic

evidence of the vehicles after the accident. *See generally id.* The majority of his report is not based on "cherry-picked" testimony, as Ms. Snyder argues, but rather has synthesized facts and data to provide a useful reconstruction of the accident. ECF No. 118 at 5.

As an example, he evaluated the damage inflicted on both vehicles involved in the crash and made conclusions consistent with his findings. ECF No. 118-5 at 5–6. He noted that Ms. Snyder's vehicle sustained damage to the right front bumper, right fender, and right hood and, therefore, concluded that she was impacted on the righthand side. *Id.* at 5. Similarly, he noted that Ms. Davidson's vehicle sustained damage to her left front bumper, left fender, and left hood, and concluded that she was impacted on the lefthand side. *Id.* at 6. He concludes that Ms. Snyder must have been traveling eastbound, rather than westbound as she had recounted in her deposition. *Id.* at 7. Although he notes that his conclusion is contradictory to Ms. Snyder's deposition testimony, he deviates from her testimony using a reliable method of crash reconstruction in the form of photographic evidence. *Id.* In addition, he supplements the photographic evidence with an analysis of the vehicles' final resting positions to create a diagrammatic reconstruction of the accident. His impact analysis is, therefore, sufficiently reliable and would help assist the jury pursuant to Rule 702 and 703.

That said, Mr. Connolly's report includes conclusory statements about the fault of the parties, including the color of the traffic signal at the time of the accident, without including any scientific evidence of support for these conclusions. He states, "Ms. Snyder failed to stop for a red light at the intersection" and "[h]er failure to stop for the red light is the direct cause of this crash." ECF No. 118-5 at 8. Elsewhere, he notes, "[w]hen [Ms. Davidson's] light turned green, she proceeded to make her turn when she was struck by Shawnna Snyder." *Id.* at 7. These statements do not comply with Rule 702 or 703 because they are not supported with any scientific

9

methodology beyond witness testimony. Ms. Snyder is correct that these type of "[c]redibility determinations are for the jury." *United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir. 1982) (en banc). Elsewhere, courts have held similarly that a "selective summary of party and witness testimony and other evidence [in an expert report] will not assist the jury." *Repa v. Napierkowski*, No. 1:19-CV-00101-RAL, 2022 WL 1522360, at *3 (W.D. Pa. May 13, 2022) (Lanzillo, M.J.) (excluding portions of a crash reconstructionist's expert report for similar reasons). Lastly, the Court notes that a conclusory statement assigning blame, without any scientific evidence as support, is the type of unfairly prejudicial evidence properly excluded by Rule 403.

Accordingly, the Court will grant in part and deny in part the Fourth Motion in Limine. Ms. Davidson is permitted to admit Mr. Connolly's expert report, but she cannot introduce evidence either through Mr. Connolly's report or by eliciting testimony from Mr. Connolly related to the color of the traffic signal at the time of the accident.[4] This question, which relies entirely on witness testimony, is for the jury alone to determine. *Jannotti*, 673 F.2d at 598.

### III. Conclusion

For the foregoing reasons, the Court resolves Ms. Snyder's motions as follows:

- The Court hereby GRANTS Ms. Snyder's First Motion in Limine (ECF No. 111). The parties shall not offer evidence, including the toxicology report or references to the toxicology report, or elicit testimony that implies Ms. Snyder was intoxicated or impaired atthe time of the accident.

- The Court hereby DENIES Ms. Snyder's Second Motion in Limine (ECF No. 113). Ms. Davidson is permitted to introduce Dr. Hasselman's expert report and offer Dr. Hasselman's testimony as an expert opinion. That said, consistent with the Court's other decisions herein, Ms. Davidson shall redact references and not elicit testimony that relate to Ms. Snyder's toxicology report and criminal convictions.

---

[4] If she seeks to admit Mr. Connolly's report, Ms. Davidson shall redact any reference Mr. Connolly makes to the color of the traffic signals, including statements made, not just by Ms. Snyder and Ms. Davidson, but also by any witnesses at the scene. *See, e.g.*, ECF No. 118-5 at 4 ("Ms. Humiston reiterated that the light for her was red."). With respect to the color of the traffic signal, redactions are appropriate even if Mr. Connolly is simply restating a person's deposition testimony, as the credibility of these statements are properly left for the jury in the absence of any scientific principle or methodology for Mr. Connolly evaluating the veracity of these statements.

- The Court hereby GRANTS Ms. Snyder's Third Motion in Limine (ECF No. 115). The parties shall not offer evidence or elicit testimony related to Ms. Snyder's two drug-related criminal convictions.

- The Court hereby GRANTS IN PART and DENIES IN PART Ms. Snyder's Fourth Motion in Limine (ECF No. 117).  Ms. Davidson is permitted to introduce Mr. Connolly's expert report and offer Mr. Connolly's testimony as an expert opinion. However, Mr. Connolly cannot testify about the color of the traffic signal, and Ms. Davidson shall redact all references to the color of the traffic signal from the expert report.

DATED this 20th day of March, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record